UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WESLEY HAMILTON, et al.,

    Plaintiffs,

        v.

DISTRICT OF COLUMBIA, et al.,

    Defendants.

Civil Action No. 09-0892 (JDB)

MEMORANDUM OPINION

Plaintiffs Wesley Hamilton and Joseph Mitchell bring this cause of action for employment discrimination under provisions of the Civil Rights Act of 1871. They are members and officers of the District of Columbia Fire and Emergency Medical Services Department ("DCFEMS"), which is an agency of the District's municipal government. Plaintiffs, two African American men, bring this suit against both DCFEMS and the District of Columbia, alleging that the defendants "discriminated against Plaintiffs on the basis of their race . . . ." Compl. ¶ 26. They assert claims for the following: (1) violation of their constitutional rights pursuant to 42 U.S.C. § 1983; (2) conspiracy to violate their constitutional rights pursuant to 42 U.S.C. § 1985(3); (3) violation of their equal right to make and enforce contracts pursuant to 42 U.S.C. § 1981; and (4) intentional infliction of emotional distress.

Before the Court is the District of Columbia's motion to dismiss all claims against DCFEMS and the District for failure to state a claim upon which relief can be granted. Upon careful consideration of the parties' filings and the entire record herein, and for the reasons set forth below, the Court will grant in part and deny in part the motion to dismiss.

## BACKGROUND

The factual allegations in support of the complaint, construed in the light most favorable to plaintiffs, are as follows. Sergeant Wesley Hamilton and Investigator Joseph Mitchell, both of whom are members of DCFEMS, were assigned to the Fire/Arson Investigation Unit, an elite unit comprised of specially trained and educated members. Compl. ¶¶ 8-10. On or about October 17, 2004, Hamilton and Mitchell were assigned to investigate a fire at 3318 Prospect Street, NW, in Georgetown, which had resulted in a fatality. Id. ¶ 12. Upon completion of their investigation, Hamilton and Mitchell drafted and submitted an initial report to their supervisor, Sergeant Phillip Proctor. Id. ¶ 13.

According to plaintiffs, DCFEMS management then took a series of unjustified adverse actions against them. Proctor informed the United States Attorney's Office for the District of Columbia, the agency responsible for prosecuting arson cases in the District, that Hamilton and Mitchell had failed properly to investigate the Prospect Street fire and had lied about the incident in the course of their investigation and subsequent report. Id. ¶ 14. Plaintiffs allege that Proctor provided this "false information" to the U.S. Attorney with the "malicious intent" to use the fire and their investigation as a pretext for removing them from the Fire/Arson Investigation Unit. Id. On November 10, 2004, the U.S. Attorney's Office informed then-Chief Adrian Thompson and then-Fire Marshall Kenneth Watts that plaintiffs could not testify in any arson cases unless and until the U.S. Attorney received confirmation that the information provided by Proctor was inaccurate. Id. ¶ 15.

Soon thereafter, in December 2004, DCFEMS filed charges against Hamilton and Mitchell, alleging they violated protocol in the course of the Prospect Street fire investigation and

had lied to their superiors about the incident. Compl. ¶ 16. Plaintiffs were suspended from their positions in the Fire/Arson Investigation Unit pending the outcome of a trial board hearing. Plaintiffs were also notified that they had been placed on what is known as the "Lewis List" by the U.S. Attorney, officially preventing them from testifying in any arson cases. Id. ¶ 17.

Pursuant to DCFEMS policy, a trial board convened to consider the allegations against Hamilton and Mitchell. On an unspecified date, the trial board cleared both plaintiffs of all charges. Id. ¶ 18. Although the trial board determined that Hamilton and Mitchell had not lied or discharged their duties inappropriately, plaintiffs were not reinstated to their positions in the Fire/Arson Investigation Unit and have since been transferred to several other positions. Id. ¶¶ 19-21. Plaintiffs allege these "demeaning" transfers were meant "to punish them even though they had proved their innocence," and have caused them to suffer financial and professional losses. Id. ¶ 21. DCFEMS failed to notify the U.S. Attorney that the trial board had cleared Hamilton and Mitchell of the charges against them. As of May 2009, when plaintiffs filed their complaint, they remained on the Lewis List. Id. ¶ 22.

In May 2008, the plaintiffs allege that they discovered a list, compiled by DCFEMS management, of African American firefighters in the department whose employment was to be terminated. Proctor was allegedly responsible for overseeing these terminations. Id. ¶ 23. Plaintiffs believe they were included on this list in an effort "to damage their career [sic]," and have brought this action for employment discrimination against the fire department and the District of Columbia. Id. ¶ 24.

## STANDARD OF REVIEW

All that the Federal Rules of Civil Procedure require of a complaint is that it contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); accord Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555-56; see also Papasan v. Allain, 478 U.S. 265, 286 (1986). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009) (quoting Twombly, 550 U.S. at 570); accord Atherton v. Dist. of Columbia Office of the Mayor, 567 F.3d 672, 681 (D.C. Cir. 2009). A complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. This amounts to a "two-pronged approach" under which a court first identifies the factual allegations entitled to an assumption of truth and then determines "whether they plausibly give rise to an entitlement to relief." Id. at 1950-51.

The notice pleading rules are not meant to impose a great burden on a plaintiff. Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 347 (2005); see also Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512-13 (2002). When the sufficiency of a complaint is challenged by a motion to dismiss under Rule 12(b)(6), the plaintiff's factual allegations must be presumed true and should

4

be liberally construed in his or her favor. Leatherman v. Tarrant County Narcotics & Coordination Unit, 507 U.S. 163, 164 (1993); Phillips v. Bur. of Prisons, 591 F.2d 966, 968 (D.C. Cir. 1979); see also Erickson, 551 U.S. at 94 (citing Twombly, 550 U.S. at 555-56). The plaintiff must be given every favorable inference that may be drawn from the allegations of fact. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000). However, "the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nor does the court accept "a legal conclusion couched as a factual allegation," or "naked assertions [of unlawful misconduct] devoid of further factual enhancement." Iqbal, 129 S. Ct. at 1949-50 (internal quotation marks omitted); see also Aktieselskabet AF 21 November 2001 v. Fame Jeans Inc., 525 F.3d 8, 17 n.4 (D.C. Cir. 2008) (the court has "never accepted legal conclusions cast in the form of factual allegations").

## ANALYSIS

### I. The Claims Against DCFEMS

The District of Columbia seeks to dismiss plaintiffs' claims against DCFEMS on the ground that the department is "not sui juris." Def.'s Mem. Supp. Mot. Dismiss ("Def.'s Mem.") 10. According to the District, "bodies within the District of Columbia are not suable as separate entities." Id. 11. It therefore asks this Court to "dismiss the instant action against the FEMS." Id.

This Court agrees. "[A] subordinate governmental agency may not sue or be sued in the absence of a statutory provision to that effect." Trifax Corp. v. Dist. of Columbia, 53 F. Supp. 2d 20, 26 (D.D.C. 1999) (citing Blackmar v. Guerre, 342 U.S. 512 (1952)). Cases in this

5

jurisdiction "have consistently held that, in the absence of a statutory provision providing otherwise, bodies within the District of Columbia government are not suable as separate entities." Hinton v. Metropolitan Police Dept., Fifth Dist., 726 F. Supp. 875, 875 (D.D.C. 1989); see also Trifax, 53 F. Supp. 2d at 26 (holding the Office of the Inspector General, District of Columbia Department of Health, District of Columbia Department of Human Services, and Department of Administrative Services are non *sui juris*), aff'd, 314 F.3d 641 (D.C. Cir. 2003); Roberson v. Dist. of Columbia Bd. of Higher Educ., 359 A.2d 28, 31 n.4 (D.C. 1976) (holding the Board of Education is not a suable entity); Miller v. Spencer, 330 A.2d 250, 251 n.1 (D.C. 1974) (holding the Department of Sanitation is not a suable entity).

DCFEMS is an agency of the District of Columbia municipal government, "a creation of D.C. Code § 5-401, [and] is not the type of independent corporate body that has the authority to sue or be sued . . . ." Ali v. Dist. of Columbia, 2010 U.S. Dist. LEXIS 27580, at *5 (D.D.C. 2010); see also Harvey v. Dist. of Columbia, 949 F. Supp. 874, 875 (D.D.C. 1996) ("Since the D.C. EMS is a part of the D.C. government . . . and because it is not *sui generis*, the plaintiff's claim against the D.C. EMS will be dismissed."). Under clear precedent, DCFEMS cannot be sued as an independent party. Therefore, defendant's motion to dismiss all claims against the agency is granted.

## II. § 1985(3) Claim for Conspiracy to Violate Plaintiffs' Constitutional Rights

To prevail on a claim under § 1985(3), plaintiff must show (a) a conspiracy, (b) the purpose of which is to deprive, either directly or indirectly, plaintiff of the equal protection of the law, or of equal privileges and immunities under the law, and (c) an act in furtherance of the conspiracy, (d) whereby plaintiff is either injured in his person or property or deprived of any

6

right or privilege of a citizen of the United States.[1] See United Bhd. of Carpenters & Joiners v. Scott, 463 U.S. 825, 828-29 (1983). The conspiracy, moreover, must be motivated by invidious, class-based animus to impose § 1985(3) liability upon its participants. Hoai v. Vo, 935 F.2d 308, 314 (D.C. Cir. 1991).

"[T]here can be no conspiracy if the conduct complained of is essentially a single act by a single entity." Gladden v. Barry, 558 F. Supp. 676, 679 (D.D.C. 1983); see also Michelin v. Jenkins, 704 F. Supp. 1, 4 (D.D.C. 1989) (holding that Board of Elections and Ethics and its officials are a single entity incapable of entering into conspiracy). Although plaintiffs allege multiple D.C. officials, including Sgt. Proctor, cooperated to compile and "execute" the list of African American firefighters whose employment was to be terminated, Compl. ¶ 23, the complaint fails to state a cognizable claim and must be dismissed. "D.C. government officials, acting within the scope of their employment, are considered members of a single entity for the purposes of § 1985." James Taylor Trash Removal v. Dist. of Columbia, 1999 U.S. Dist. LEXIS 13845, at *8-9 (D.D.C. 1999); see also McMillian v. Dist. of Columbia, 466 F. Supp. 2d 219, 223 (D.D.C. 2006) ("The District of Columbia and its officials . . . constitute a single entity."). Where, as here, the complaint states a claim against a single entity -- the District of Columbia -- and alleges a conspiracy among the city's officials, the claim must be dismissed "because no

---

[1] Section 1985(3) provides, in pertinent part, that: "[i]f two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators." 42 U.S.C. § 1985(3). The D.C. Circuit has examined the statutory language and determined that it encompasses the District of Columbia. Hobson v. Wilson, 737 F.2d 1, 19 (D.C. Cir. 1984), abrogated in part on other grounds, Leatherman, 507 U.S. at 166.

separate entity or individual is involved . . . with whom plaintiff can allege the District conspired to violate his rights." Gladden, 558 F. Supp. at 680. As a matter of law, then, no conspiracy can exist as pleaded by the complaint, and the § 1985(3) claim fails.

### III. Exhaustion of Administrative Remedies

The District construes plaintiffs' complaint to assert a claim under Title VII, based on the reference in Count One to "discriminatory treatment based on race." Compl. at 6. It seeks dismissal of any Title VII claim on the ground that "Title VII does not entitle private parties to bring an action before seeking administrative relief." Def.'s Mem. 5. "Title VII prohibits discrimination by an employer against 'any individual' based on that individual's 'race, color, religion, sex, or national origin.'" Gaujacq v. EDF, Inc., 601 F.3d 565, 576 (D.C. Cir. 2010) (citing 42 U.S.C. 2000e-2(a)). "Title VII requires that a person complaining of a violation file an administrative charge with the EEOC and allow the agency time to act on the charge. Only after the EEOC has notified the aggrieved person of its decision to dismiss or its inability to bring a civil action within the requisite time period can that person bring a civil action herself." Park v. Howard Univ., 71 F.3d 904, 907 (D.C. Cir. 1995); see also 42 U.S.C. 2000e-5(f)(1) ("Within ninety days after the giving of [a notice of right to sue] a civil action may be brought against the respondent named in the charge.").

Plaintiffs' complaint makes no reference to Title VII and, indeed, plaintiffs concede they have not exhausted their administrative remedies under Title VII because they did not file with the EEOC prior to bringing this case. Pet'rs' Resp. 4 n.1. Hence, plaintiffs have effectively conceded they cannot bring a Title VII claim.

The District presumes that plaintiffs' failure to exhaust under Title VII also precludes

8

their claims under §§ 1981, 1983 and 1985(3). That presumption is in error. As explained in more detail below, Title VII is not the exclusive federal remedy for state employees seeking redress for discrimination, and such employees may seek redress instead under §§ 1981 and 1983. Because state employees are not required to proceed through Title VII, they need not exhaust those administrative remedies prior to bringing suit under §§ 1981 or 1983 when the rights asserted are, as here, not conferred by Title VII.[2]

While federal employees must bring discrimination claims against their employers under Title VII, Brown v. General Services Admin., 425 U.S. 820, 829 (1976), Congress did not similarly designate Title VII as the exclusive remedy for state and local employees. Hence, numerous courts have held that Congress intended for state employees to retain the right to sue for workplace discrimination under applicable statutes in addition to Title VII. See, e.g., Morris v. Washington Metro. Area Transit Auth., 702 F.2d 1037, 1040 (D.C. Cir. 1983) ("Title VII . . . does not similarly preempt the pursuit by state employees of alternative remedies against the agencies or officials that employ them."); Keller v. Price George's County, 827 F.2d 952, 962 (4th Cir. 1987) ("Congress was aware of the remedies for state employees such as § 1983 which preexisted Title VII, and it decided that those remedies should remain available."). Plaintiffs, employees of DCFEMS, are "the counterparts of employees of state and local government units, rather than federal employees." Torre v. Barry, 661 F.2d 1371, 1374-75 (D.C. Cir. 1981). They

---

[2] The Court will use the term "State" to include the District of Columbia and its government. See 42 U.S.C. § 1983 (providing that "every person who, under color of any statute, ordinance, [or] regulation . . . of any State or Territory or the District of Columbia, subjects … any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured") (emphasis added); see also Boyd v. Dist. of Columbia, 526 F. Supp. 2d 44, 48 n.3 (D.D.C. 2007) (stating that "[f]or the purposes of § 1983, the District of Columbia is treated as a state").

are not subject to the rule in Brown v. GSA under which Title VII is the exclusive remedy for federal employees' discrimination claims.

The issue, then, is whether Title VII precludes state and private employees from bringing suit under the Civil Rights Act of 1871 specifically. In establishing the applicability of Title VII to state and local employees, the House Committee on Education and Labor emphasized that "the individual's right to file a civil action in his own behalf, pursuant to the Civil Rights Act of 1870 and 1871, 42 U.S.C. §§ 1981 and 1983, [was] in no way affected . . . ." Torre, 661 F.2d at 1372 (citing H.R. Rep. No. 92-238, at 18-19, U.S. Code Cong. & Admin. News 1972). Extending Title VII jurisdiction to state and local government employees did "not affect existing rights that such individuals [had] already been granted by previous legislation." Id.

The Supreme Court has held specifically that Title VII does not preempt § 1981. "[T]he remedies available under Title VII and under § 1981, although related, and . . . directed to most of the same ends, are separate, distinct and independent." Johnson v. Ry. Express Agency, 421 U.S. 454, 461 (1975); see also Great American Savings & Loan Ass'n v. Novotny, 442 U.S. 366, 377 (1979) ("[T]he passage of Title VII did not work an implied repeal of the substantive rights to contract conferred by . . . 42 U.S.C. § 1981."); Torre, 661 F.2d at 1374-75 ("[State employees] retain an independent right of action under § 1981. This right of action . . . is not dependent on initial resort to Title VII's administrative procedures.").

Unlike § 1981, however, § 1983 does not confer substantive rights in and of itself; rather, it is exclusively remedial, providing a cause of action for violations of the substantive rights conferred by the Constitution or federal statute. Harris v. Univ. of the Dist. of Columbia, 1990 W.L. 99316, at *6 (D.D.C. 1990) (pertaining to § 1983). But individuals cannot bring suit under

§ 1983 to redress violations of rights conferred by Title VII because a right created by Title VII must be asserted directly under Title VII.[3] See Novotny, 442 U.S. at 375-76. Whether § 1983 can be used as a vehicle for bringing an employment discrimination claim based on a violation of the Constitution has not been resolved by the Supreme Court, but, as the Seventh Circuit has noted, "two Justices in the Novotny majority wrote separately to suggest that Mr. Novotny's employment discrimination claim based on § 1985(3) would have been legally sufficient if he could have asserted *Constitutional* violations." Trigg v. Fort Wayne Cmty. Sch., 766 F.2d 299, 301-02 (7th Cir. 1985); see Novotny, 442 U.S. at 379-81 (Powell, J., concurring) and 383-85 (Stevens, J., concurring). Every circuit that has addressed the issue has held that an employment discrimination plaintiff alleging the violation of a constitutional right may bring suit under § 1983 alone, and is not limited to a claim under Title VII." See Annis v. County of Westchester, 36 F.3d 251, 255 (2d Cir. 1994) ("[A]n employment discrimination plaintiff alleging the violation of a constitutional right . . . is not required to plead concurrently a violation of Title VII."); Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1079 (3d Cir. 1990) ("[T]he comprehensive scheme provided in Title VII does not preempt section 1983, and . . .

---

[3] A right created by Title VII must be asserted under Title VII in order to preserve the integrity of the "detailed and specific provisions" of the law's administrative process, which plays "a crucial role in the scheme established by Congress . . . ." Novotny, 442 U.S. at 375-76. "Unimpaired effectiveness can be given to the plan put together by Congress in Title VII only by holding that deprivation of a right *created* by Title VII cannot be the basis for a cause of action under § 1985(3)." Id. at 378 (emphasis added); see also Harris, 1990 WL 99316, at *6-7 ("Title VII may not be used as the substantive right to trigger § 1983 for it would allow the plaintiff to bypass Title VII's statutory scheme."). Although the Supreme Court has not decided whether § 1983 is subject to the same limitation, the great weight of authority suggests that, like § 1985, § 1983 cannot serve as the basis for a suit enforcing a right first created by Title VII. See, e.g., Day v. Wayne City Bd. of Auditors, 749 F.2d 1199, 1204 (6th Cir. 1984); Alexander v. Chicago Park Dist., 773 F.2d 850, 855-56 (7th Cir. 1985).

discrimination claims may be brought under either statute, or both."); Rivera v. P.R. Aqueduct & Sewers Auth., 331 F.3d 183, 192 n.7 (1st Cir. 2003) (same); Keller v. Price George's County, 827 F.2d 952, 962 (4th Cir. 1987) (same); Carpenter v. Stephen F. Austin State Univ., 706 F.2d 608, 612 (5th Cir. 1983) (same); Day v. Wayne City Bd. of Auditors, 749 F.2d 1199, 1205 (6th Cir. 1984) (same); Trigg v. Fort Wayne Cmty. Sch., 766 F.2d 299, 302 (7th Cir. 1985) (same); Hervey v. Little Rock, 787 F.2d 1223, 1233 (8th Cir. 1986) (same); Roberts v. College of Desert, 870 F.2d 1411, 1415-16 (9th Cir. 1988) (same); Starrett v. Wadley, 876 F.2d 808, 814 (10th Cir. 1989) (same); Thigpen v. Bibb County, 223 F.3d 1231, 1238-39 (11th Cir. 2000) (same); see also Wright v. Montgomery County, 1999 U.S. Dist. LEXIS 2947, 6 (E.D. Pa. 1999) ("[c]ircuit courts have unanimously held that Congress did not intend to make Title VII the exclusive remedy for employment discrimination, where those claims derive from violations of Constitutional right").[4]

Plaintiffs Hamilton and Mitchell allege DCFEMS mistreated them "because they were African Americans." See Pet'rs' Resp. 7. Although the complaint does not expressly refer to a constitutional equal protection claim, it does refer to "[v]iolation of constitutional rights" and "discriminatory treatment based on race" which, together, is reasonably understood as a Fifth

---

[4] This Circuit has not directly addressed whether Title VII precludes a District employee from seeking relief under § 1983, but has stated that "a nonfederal public employee generally has resort to all other statutory and constitutional remedies available to redress deprivations of constitutional rights." Morris v. Washington Metro. Area Transit Auth., 702 F.2d 1037, 1041 (D.C. Cir. 1983) (treating appellant's First Amendment claim on appeal as if it were an action under § 1983); see also Carter v. Dist. of Columbia, 14 F. Supp. 2d 97, 102 (D.D.C. 1998) (stating that district "[e]mployees who believe they have suffered discrimination have the right to bring a . . . Section 1983 claim" that is "not subject to the exhaustion of an administrative remedy.").

Amendment equal protection violation.[5] Because plaintiffs assert violations of their constitutional rights under the Fifth Amendment, their § 1981 and § 1983 claims are unaffected by the avenues of relief set up by Title VII, including their failure to exhaust administrative remedies under Title VII.

**IV. The § 1983 Claim Based on a "Policy or Custom"**

To prevail on their § 1983 claim against the District, plaintiffs must show a predicate constitutional violation which resulted from a "policy or custom" of the District of Columbia. Baker v. Dist. of Columbia, 326 F.3d 1302, 1306 (D.C. Cir. 2003). Municipalities, like the District of Columbia, do not enjoy absolute immunity from section 1983 liability. Smith v. Dist. of Columbia, 674 F. Supp. 2d 209, 211 (D.D.C. 2009); see also Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 690-91 (1978); Barnhardt v. Dist. of Columbia, 601 F. Supp. 2d 324, 3327 n.4 (D.D.C. 2009) ("The District of Columbia is a municipality and is considered a 'person' for the purposes of §1983."). They may be held liable "where the municipality itself causes the constitutional violation at issue." City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989). But municipalities are not liable under section 1983 pursuant to a theory of "[r]espondeat superior or vicarious liability." Id.; see also Monell, 436 U.S. at 694-95. Therefore, "[u]nder Monell, municipalities are liable for their agents' constitutional torts only if the agents acted pursuant to municipal policy or custom." Warren v. Dist. of Columbia, 353 F.3d 36, 38 (D.C. Cir. 2004); see

---

[5] The complaint's allegation that the District of Columbia sought to terminate or adversely affect plaintiffs' employment at DCFEMS because they were African American gives rise to a Fifth Amendment equal protection claim as an invidious, race-based form of discrimination. Defendant's contention that the § 1981 and § 1983 claims should be dismissed for "fail[ure] to state the constitutional or statutory basis" lacks merit in light of plaintiffs' reference to a "violation of Constitutional rights" and the factual allegations of race discrimination.

also Monell, 436 U.S. at 694. The "first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." City of Canton, 489 U.S. at 385.

A municipality's custom or policy may "cause" a constitutional violation under several different circumstances. "[F]or instance, the municipality or one of its policymakers [could have] explicitly adopted the policy that was 'the moving force of the constitutional violation.'" Warren, 353 F.3d at 39 (quoting Monell, 436 U.S. at 694). "Or a policymaker could knowingly ignore a practice that was consistent enough to constitute custom," thereby leading to a violation. Id. The unconstitutional discrimination could also be "so widespread as to constitute a custom, practice or policy . . . ." Reed v. Dist. of Columbia, 474 F. Supp. 2d 163, 168 (D.D.C. 2007). An agency practice need not be "authorized by written law," but may be "so permanent and well settled as to constitute a 'custom or usage' with the force of law." Monell 436 U.S. at 691.

In contrast, "[p]roof of a single incident of unconstitutional activity is insufficient to impose liability [under § 1983] unless there was proof that there was a policy in place that was unconstitutional." Ekwem v. Fenty, 666 F. Supp. 2d 71, 79 (D.D.C. 2009) (quoting Sanders v. Dist. of Columbia, 522 F. Supp. 2d 83, 88 (D.D.C. 2007)). It follows that a single instance of unconstitutional activity, without more, is insufficient to establish that a requisite custom or policy exists. Moreover, an assertion that management or supervisors approved the unconstitutional act is insufficient to show an "official custom, practice or policy of discriminating . . . . Were it otherwise, nearly every act could impute Section 1983 liability to the government." Duberry v. Dist. of Columbia, 582 F. Supp. 2d 27, 39 (D.D.C. 2008).

The key allegation of the complaint concerning a discriminatory custom or policy is the

allegation that DCFEMS "compiled a list of African American Firefighters that it wanted to terminate . . . . [which] was given to Sgt. Proctor to execute." Compl. ¶ 23. The other factual allegations -- regarding the investigation of the Georgetown fire and the plaintiffs' longstanding placement on the Lewis List -- speak primarily to the experiences of these two plaintiffs at the department and do not suffice to demonstrate a custom or policy of discrimination.[6] But liberally construing the factual allegations, as the Court is required to do on a motion to dismiss, the Court has determined that the complaint adequately pleads that plaintiffs were placed on the alleged list and were consequently mistreated by the department because they were African American. The factual allegations concerning the list of African Americans designated for termination, though terse, "nudge[s]" plaintiffs' claim of a discriminatory custom or policy "across the line from conceivable to plausible," Twombly, 550 U.S. at 570, but only by a hair's breadth.[7] Defendant's motion to dismiss the § 1983 claim is therefore denied at this time.

## V. The § 1981 Claim

A cause of action under § 1981 can be brought when a plaintiff has suffered an injury

---

[6] Moreover, the timeframe for these allegations may prove problematic in this litigation as it progresses. Although the defendant's motion to dismiss does not raise the statute of limitations, this Court will note that the events of 2004 may fall outside the three-year statute of limitations for §§ 1981, 1983 and 1985(3). See Barr v. Clinton, 370 F.3d 1196, 1201 (D.C. Cir. 2004); Hicks v. William, 2006 U.S. App. LEXIS 20423, at *3 (D.C. Cir. 2006).

[7] Despite its centrality to this case, the complaint includes no further information about when, by whom or how the alleged list was compiled or subsequently discovered. Petitioners believe they were included on this list "to damage their career [sic] and eventually terminate their employment with the department." Compl. ¶ 24. The complaint does not allege explicitly that the firefighters on this list were included *because* they were African American, as opposed to some other non-invidious, legitimate reason, nor does it suggest that anyone but the plaintiffs were adversely affected by their inclusion on the list. It does at other points, however, assert that "[b]ecause of their race," plaintiffs were harassed, intimidated, subjected to "arbitrary and demeaning transfers" and "removed from the Arson Investigation Unit so that they could be replaced by white inexperienced members." Id. ¶ 26.

flowing from the racially motivated breach of his contractual relationship with another party. Domino's Pizza v. McDonald, 546 U.S. 470, 480 (2006). Violation of the rights guaranteed by § 1981 by state entities can be remedied exclusively through the cause of action for damages created by § 1983. Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 733 (1989). To prevail on a claim under § 1981 against the District, therefore, a plaintiff must show that the violation of his "'right to make contracts' protected by § 1981 was caused by a custom or policy within the meaning of Monell and subsequent cases." Id. at 735-36.

The complaint does not specify which clause of § 1981 it intends to invoke and does not allege explicitly that plaintiffs are employed pursuant to contract. However, the District does not deny having a contractual relationship with plaintiffs and the complaint, liberally construed, implies such a contractual relationship exists. This reading of the complaint is confirmed in plaintiffs' response to the District's motion to dismiss, which states that "the actions taken by the DCFEMS not only interfered with the performance of an existing contract with the Plaintiffs, but it also denied the Plaintiffs the benefits of their contract with the city," Pet'rs' Resp. 5-6, causing plaintiffs to suffer "substantial loss of pay and potential promotion." Compl. ¶ 21. Liberally construed and drawing all inferences in plaintiffs' favor, the complaint sufficiently pleads that plaintiffs were denied the benefits of their employment contract with the District.

The issue remains, as in the § 1983 claim, whether the violation of plaintiffs' § 1981 rights occurred pursuant to the District's custom or policy. The alleged list, discussed above, constitutes a significant factual contention which, taken as true and drawing all inferences in favor of the plaintiffs, suffices to put the District of Columbia on "fair notice" of the custom or policy that forms the basis of their § 1981 claim and "the grounds upon which it rests."

Twombly, 550 U.S. at 555 (citing Fed. R. Civ. P. 8(a)(2)). Accordingly, the § 1981 claim also survives at this time.

## VI. The Claim For Intentional Infliction of Emotional Distress

Count Three of the complaint asserts a claim for intentional infliction of emotional distress ("IIED"), characterizing the District's actions as "wanton, outrageous, beyond all possible bounds of decency[,] . . . atrocious and utterly intolerable in a civilized community." Compl. ¶ 39. Plaintiffs have recited the requisite elements of the claim, described as "conduct so 'outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Browning v. Clinton, 292 F.3d 235, 248 (D.C. Cir. 2002) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). The District's motion to dismiss purports to encompass Count Three, but its memorandum in support of the motion does not specifically address the IIED claim. The Court has reviewed the claim and questions whether the factual allegations are sufficient to support an IIED claim. But because the District's memorandum contains no discussion of this count, the motion to dismiss this claim will be denied without prejudice.

## CONCLUSION

For the foregoing reasons, all claims against DCFEMS are dismissed. The § 1985(3) claim against the sole remaining defendant, the District of Columbia, is also dismissed. The remaining claims against the District -- under § 1981 and § 1983, and for intentional infliction of emotional distress -- will be allowed to move forward. In light of the Court's concerns regarding the sparse factual allegations relating to the alleged custom or policy of discrimination underlying plaintiffs' § 1981 and § 1983 claims, the Court intends to limit the first phase of discovery to the

subject of whether such a custom or policy exists at DCFEMS. The scope of discovery will be discussed further at an initial scheduling conference to be held pursuant to Rule 26 of the Federal Rules of Civil Procedure after the District answers plaintiffs' complaint.

/s/
JOHN D. BATES
United States District Judge

Date: July 6, 2010